The Second Circuit Court of Appeals has also determined that "police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (citation omitted). Sergeant Smolicz testified that when he opened the door, he observed that Mr. Kromhout had a knife and that he believed that Ms. Liguori had been crying. Given these facts, along with the fact that he had reason to believe Mr. Kromhout had assaulted Carmella and made threats against Ms. Liguori and her family, it was reasonable for Sergeant Smolicz to believe that Ms. Liguori was in need of the officers' immediate assistance. Accordingly, the officers were justified in entering the residence.

Finally, it is also well settled that a warrantless search does not violate the Fourth Amendment if "the authorities have obtained the voluntary consent of a person authorized to grant such consent," United States v. Elliott, 50 F.3d 180, 185 (2d Cir. 1995), cert. denied, 133 L. Ed. 2d 669, 116 S. Ct. 715 (1996), and that "so long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). In the present case, Ms. Liguori opened the door and let Sergeant Smolicz and Officer Purcaro into the apartment. Smolicz Dep. at 107-108. Mr. Kromhout alleges in his complaint that Ms. Liguori did not provide the officers with consent to enter the apartment, Am. Compl., First Count, ¶ 6, but Mr.

355797                                    25

Kromhout offers no evidence to support this conclusory allegation. Accordingly, summary judgment should be granted for the defendants.

### D.    The Plaintiff Cannot Sustain a Cause of Action for False or Unlawful Arrest.

Mr. Kromhout also alleges that the defendant officers violated his Fourth Amendment Rights "in placing him under arrest." Am. Compl., First Count, ¶ 17. Despite this claim, plaintiff cannot sustain a cause of action for false arrest, in part because he cannot allege a favorable resolution of the criminal proceedings that resulted from his being arrested. In Roesch v. Otarola, the Second Circuit held that in order to prove a constitutional claim for false arrest, the plaintiff must demonstrate that he obtained a favorable termination of the underlying criminal proceedings that form the basis of the false arrest claim. 980 F.2d 850, 853 (2d Cir. 1992). In short, "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged *must pursue the criminal case to an acquittal or an unqualified dismissal*, or else *waive* his section 1983 claim." Id. ; see also Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir. 1980) ("Without proof that the criminal prosecution based on probable cause was terminated in defendant's favor, no federal claim exists.")

In the present case, the plaintiff cannot demonstrate a favorable resolution with respect to the underlying criminal charges stemming from this arrest. Plaintiff was arrested on several counts, including a charge of interfering with a police officer. Plaintiff was convicted on this charge, upon

355797

26

entering a plea of nolo contendere. Kromhout Dep. at 197. Given that he was convicted, he cannot now claim that he was the victim of a false arrest in violation of his constitutional rights. See, e.g., Marczeski v. Law, 122 F. Supp. 2d 315, 328 (D. Conn. 2000) (plaintiff cannot allege favorable termination where she entered plea of nolo contendere and was convicted on the charge).

The other charges against Mr. Kromhout stemming from his arrest on September 23, 1999, were nolled. Kromhout Dep. at 197. Plaintiff cannot sustain a cause of action for false arrest on these charges, either, because, once again, plaintiff cannot allege a favorable resolution of the underlying criminal proceedings. In Birdsall v. City of Hartford, this Court seemingly agreed with defendants' reasoning. This Court considered the precise question of whether a plaintiff who had obtained a nolle on underlying criminal charges could pursue a claim for false imprisonment. Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003). Relying on Roesch, the Court held that a nolle is necessarily something less than a favorable resolution of the criminal proceedings because it leaves open the question of the accused's guilt. On this fact alone, the Court rightly concluded that a section 1983 plaintiff who obtained a nolle could not possibly demonstrate a favorable resolution of the criminal proceedings sufficient to state a constitutional claim for false arrest. Id. The same rule should apply here, and plaintiff should be precluded from sustaining a cause of action for false arrest. Summary judgment should be granted for the defendants on plaintiff's claims of false arrest.

## II.    OFFICERS DEELEY AND PURCARO ARE
   ENTITLED TO QUALIFIED IMMUNITY

Even if the plaintiff has stated a claim that his rights were violated, a proposition the

defendants dispute, the defendants are entitled to qualified immunity.[1]  The Second Circuit Court of

Appeals has held that, "[t]he qualified immunity defense is generally available against excessive

force claims." Lennon v. Miller, 66 F.3d at 425, quoting Finnegan v. Fountain, 915 F.2d 817, 222-23

(2d Cir. 1990).  The qualified immunity defense protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir.

1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The Supreme Court recently affirmed that, "[w]here the defendant seeks qualified immunity,

a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial

are avoided where the defense is dispositive." Saucier v. Katz, 121 S. Ct. 2151, 2155-2156 (2001).

"Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" Id.

(quoting Michell v. Forsyth, 472 U.S. 511, 526 (1985).  "The privilege is an immunity from suit

rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is

---

[1] As discussed in greater detail below, defendants are also entitled to governmental immunity on plaintiff's state law
claims.  Defendants recognize that there are some subtle differences in the qualified immunity analysis presented in this
section and a state law governmental immunity analysis.  Defendants wish to make it clear to the Court that, for the
reasons discussed in section IV, below, governmental immunity also applies to the facts of the present case and precludes
the plaintiff from recovering against the defendants on his state law claims.

erroneously permitted to go to trial…As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest stage in litigation." Id. (internal quotations omitted); Hunter v. Bryant, 502 U.S. 224, 227 (1991). "The doctrine protects public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences." Warmouth v. Johannes, No. 3:97-CV-1980, 1999 U.S. Dist. LEXIS 2728, at *5 (D. Conn. Feb. 23, 1999) (attached to this Memorandum of Law at Tab 2); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).

"Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, *summary judgment is encouraged as a device for disposing of claims barred by such immunity*." In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996) (emphasis added); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992). To establish this defense at the summary judgment stage, "the officers must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights." Soares v. State of Connecticut,

8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted); <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).

Accordingly, the first step in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged a deprivation of a constitutional right at all. <u>Connell v. Signoracci</u>, 153 F.3d 74, 80 (2d Cir. 1998). Only if the plaintiff has sufficiently alleged a constitutional violation is it necessary to determine whether the officer, or officers of reasonable competence, believed his actions violated plaintiff's rights. <u>Malloy v. Briggs</u>. 475 U.S. 335, 341 (1986). Simply stated, the test for qualified immunity is an objective one. <u>See</u> <u>Reese v. Garcia</u>, 115 F. Supp. 2d 284, 295 (D. Conn. 2000).

### A.     The Defendants Did Not Violate Any Clearly Established Law.

Defendants are entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right." <u>Lennon</u>, 66 F.3d at 420. In order to determine whether the plaintiff's liberty interest was clearly established, the court must look to the state of the law as it existed on September 23, 1999, the date of the incident alleged in the First Amended Complaint. <u>Tellier v. Fields</u>, 230 F.3d 502, 515 (2d Cir. 2000). "For a right to be 'clearly established' for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or

of the appropriate circuit have defined the contours of the right with reasonable specificity." Id. (internal quotations omitted) (citing cases). "Furthermore, a law is considered 'clearly established' so long as this circuit's decisions clearly foreshadow a particular ruling on the issue." Id. (internal quotations omitted) (citing cases).

At the date of the incident, September 23, 1999, defense counsel is unaware of any controlling Supreme Court or the Second Circuit Court of Appeals case law regarding the appropriate use of a K9 to apprehend a suspect. To date, neither the Supreme Court nor the Second Circuit has addressed the issue of the appropriate circumstances governing the use of K9 to apprehend a suspect. There are no decisions holding that it is inappropriate to use a police dog to apprehend a suspect in circumstances similar to those presented here. Despite the lack of controlling Supreme Court or Second Circuit precedent, a review of existing case law affirms that, on September 23, 1999, no clearly established law regarding the use of a K9 in law enforcement existed. See Anderson, 483 U.S. at 636 (explaining that qualified immunity turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken). Therefore, the defendants are entitled to qualified immunity. See, e.g., Shannon v. City of Cost Mesa, 1995 U.S. App. LEXIS 2236 (9th Cir. Feb. 3, 1995) (K9 officer entitled to qualified immunity because at the time of the incident, the law regarding deploying police dogs was not clearly established) (attached to this Memorandum of Law at Tab 3).

**B.      The Defendant's Conduct Was Objectively Reasonable.**

Even if the law regarding the appropriate use of a K9 in law enforcement was clear as of

September 23, 1999, the conduct of the defendants was objectively reasonable. "Because police

officers are often forced to make split-second judgments – in circumstances that are tense, uncertain,

and rapidly evolving – about the amount of force that is necessary in a particular situation, the

reasonableness of the officers' belief as to the appropriate level of force should be judged from that

on-scene perspective." Saucier, 121 S. Ct. at 2158 (internal citations omitted).  Deference must be

afforded to the judgment of reasonable officers on the scene instead of using the benefit of hindsight

with 20/20 vision.  Id.  Particular attention must be given to the facts and circumstances of each case:

> including the severity of the crime at issue, whether the suspect
> poses an immediate threat to the safety of the officers or others,
> and whether the suspect he is actively resisting arrest or attempting
> to evade arrest by flight. If an officer reasonably, but mistakenly,
> believed that a suspect was likely to fight back, for instance, the
> officer would be justified in using more force than in fact was
> needed.

Id.

"Generally, an officer's actions are considered objectively unreasonable when no officer of

reasonable competence could have made the same choice in similar circumstances." Williams v.

Lopes, 64 F. Supp. 2d 37 (D. Conn. 1999) (quotations omitted).

For the reasons set forth above, Officer Deeley's use of K9 Argo in the arrest of Mr. Kromhout was reasonable. First, the officer knew that Mr. Kromhout was potentially armed. Second, the officers knew Mr. Kromhout had a history of being hostile toward the police. Third, Mr. Kromhout fled from the police when they arrived at his home. And finally, Officer Kromhout hid under a bed despite repeated commands to make himself known. The case law cited above, compels the conclusion that the officers' decision to release K9 Argo and give him the command to apprehend was objectively reasonable under the circumstances. Therefore, the defendants are entitled to qualified immunity. See, e.g., Shannon v. City of Cost Mesa, 1995 U.S. App. LEXIS 2236; Samarco v. Neumann, 44 F. Supp. 2d 1276, 1293-95 (S.D. Fla. 1999) (it was objectively reasonable for K9 officer to utilize dog to apprehend suspect where suspect was potentially armed and had ignored police requests to come out of hiding, therefore officer was entitled to qualified immunity).

## III. THE PLAINTIFF CANNOT ESTALISH THAT THE BOROUGH OF NAUGATUCK IS LIABLE UNDER MONELL

Plaintiff seeks to hold the Borough of Naugatuck liable for the allegedly illegal acts of Officers Deeley and Smolicz on the grounds that the Borough ignored prior complaints that these officers committed acts that amounted to excessive use of force. Am. Compl., Count Three; Am. Compl. Count Four.

In order to hold a municipality liable under 28 U.S.C. § 1983, a plaintiff must prove that a municipal "policy" or "custom" caused the deprivation of his rights of which he complains. Board of

Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). "Municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." Id. (quotations omitted) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-484 (1986). The United States Supreme Court has stated that:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404.

"The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation." Surlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). Rather, actions by an official "whose edicts or acts may fairly be said to represent the official policy" may expose the municipality to § 1983 liability. Monell, 436 U.S. at 694. A single act of a policymaker can constitute a municipal policy. Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992). However, not all acts of policymakers constitute municipal policies. Pembaur, 475 U.S. at 480. The Supreme Court has stated that the circumstances giving rise to municipal liability on the basis of a custom, as opposed to an official policy, are limited. Specifically, the Court stated, "an act

355797

34

performed pursuant to a custom that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that that relevant practice is *so widespread* as to have the force of law." Brown, 520 U.S. at 404.

Where a plaintiff seeks to hold a municipality liable on the basis of a policy of ignoring citizen complaints, "deliberate or reckless indifference to complaints must be proved in order to establish that an abusive practice has actually been condoned and therefore can be said to have been adopted by those responsible for making municipal policy." Wilson v. City of Chicago, 6 F.3d 1233 (7th Cir. 1993). Proof of deliberate indifference requires more than a showing of mere negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Sarus v. Rotundo, 831 F.2d 397, 401 (2d Cir. 1987) (noting that "it must be demonstrated that the municipality's failure to supervise or properly train its police force is so severe as to constitute *gross negligence*.")(emphasis added).

In the present case, there is no evidence that the Borough of Naugatuck has demonstrated any deliberate indifference to complaints of police misconduct. Rather, the evidence demonstrates that the Borough has adequate procedures in place for dealing with citizen complaints. The Borough of Naugatuck has several procedures in place for handling citizen complaints of police misconduct. Clisham Aff., ¶ 5 Moreover, the Naugatuck Police Department is overseen by a Board of Police Commissioners. Id., ¶ 5. Citizens a provided with detailed instructions when they want to make a complaint of police misconduct. Id., ¶ 6. Once a civilian complaint is received it is assigned to either

355797                                          35

Deputy Police Chief Hunt or Captain James Fortin of the Naugatuck Police Department to conduct an internal investigation of the complaint. Id., ¶ 7. The exact nature of the internal investigation obviously depends on the severity of the complaint. Id.,¶ 8. At the conclusion of each investigation, a written report is prepared. Id.,¶ 9.

With respect to complaints of excessive use of force, including complaints related to the use of K9 force, Chief Clisham reviews the report and make a decision whether to forward the complaint to the Board of Police Commissioners. Id., ¶ 10. The severest complaints are referred to the Board of Police Commissioners. Id., ¶ 11. Indeed, these procedures have been used by the Borough to discipline police officers. During the time that Chief Clisham has been the chief of police, several officers have been disciplined for violations of the Naugatuck Police Department's rules and regulations. Id., ¶ 11. The discipline imposed upon these officers has followed a progression ranging from verbal warnings, to written warnings, to suspension and discharge. Id., ¶ 13.

In sum, plaintiffs offer no evidence whatsoever demonstrating deliberate indifference on the part of the Borough in handling citizen complaints of misconduct. The bulk of the evidence regarding the Borough's policy of investigating complaints indicates that the policy provides a fair means of handling complaints, and therefore, the Borough is entitled to summary judgment on these claims. See, e.g., Wright v. Town of Glenarden, 1996 U.S. App. LEXIS 15393, at *10 (4th Cir. 1996) (where plaintiff sought to hold town liable under theory that town ignored prior complaints of

excessive force, town was entitled to summary judgment because it had adequate procedures in place for reporting complaints, plaintiff could not show that those procedures were deficient, and plaintiff could not show that the procedures were routinely ignored) (attached to this Memorandum of Law at Tab 4).

In a similar case, <u>Sarus v. Rotundo</u>, 831 F.2d 397 (2d Cir. 1987), the Second Circuit rejected evidence put on by the plaintiff demonstrating that complaints against a certain police officer were ignored because no disciplinary action was taken against a particular officer. In that case, the Chief of Police provided testimony of other disciplinary proceedings. The record indicated that the town had a policy of investigating complaints, and that the city utilized that policy to discipline officers. "As a result," the Court noted, "the record provides no basis for the jury to conclude that [the system of handling citizen complaints] was lacking in any way, let alone so deficient as to reflect a policy of deliberate indifference." <u>Id</u>. at 401-02.

Finally, regardless of whether the plaintiff in the present case can demonstrate that the Borough of Naugatuck has a custom or policy of ignoring citizen complaints, the plaintiffs have not provided any evidence of a causal nexus between the Borough's policies or customs regarding citizen complaints and the alleged deprivation of Shane Michaels' constitutional rights. Accordingly, liability cannot lie against the Borough of Naugatuck.

355797                                    37

The law requires the plaintiff to prove that that the municipality's policy was the "moving force" behind the alleged injury. <u>Brown</u>, 520 U.S. at 404. Where no evidence of causation is provided, the plaintiffs' claims of municipal liability must fail. For example, in <u>Searcy v. Dayton</u>, 38 F.3d 282 (6th Cir.1994) the plaintiff sought to hold the defendant municipality liable for an apparent constitutional violation by arguing that the city had a deficient policy with respect to investigating police misconduct. The court reasoned that in order for municipal liability to attach, the plaintiff not only had to identify a police but also "connect the policy to the City itself *and show that the particular injury was incurred because of the execution of the policy.*" The court held that regardless of whether the City failed to investigate the allegation of misconduct, and regardless of whether such failure amounted to a policy or custom, "plaintiffs have not presented any evidence to indicate the failure to investigate other misconduct was the moving force behind" the alleged violation. Accordingly, the court upheld the lower courts grant of summary judgment in favor of the city.

Perhaps recognizing the fact that they do not have the facts to support a claim of deliberate indifference by the Borough of Naugatuck, plaintiffs' complaint is littered with statements like the Borough "knew or with reasonable diligence should have known of the pattern of constitutionally offensive acts committed by the defendant Deeley. . . ." Am. Compl., Fourth Count, ¶ 21. This allegation sounds in negligence, however. Proof of deliberate indifference requires more than a mere showing of negligence. <u>Sarus v. Rotundo</u>, 831 F.2d 391, 401 (2d Cir. 1987). "Only where a

municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>Canton v. Harris</u>, 489 U.S. 378, 385 (1989). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Board of the County Comm'rs. v. Brown</u>, 520 U.S. 397, 404 (1997).

Plaintiff also seeks to hold the Borough liable on the theory that it failed to adequately train Officer Deeley in the use of K9 Argo. The Seventh Circuit has held that, "proof of failure to train officers <u>could be used</u> to demonstrate that the municipality approves (hence has a policy of) improper conduct that training could extirpate." <u>Dye v. Wargo</u>, 253 F.3d 296 (7th Cir. 2001). However, "[s]uch a claim in a case like this would depend on establishing that the City's policymakers knew that the police were using objectively unreasonable force in apprehending suspects, yet did nothing to solve the problem." <u>Id.</u> Applying the reasoning employed by the Seventh Circuit, the plaintiff cannot show that the Borough of Naugatuck approved of a policy of improper conduct that training could eradicate.

In a strikingly similar case, the Sixth Circuit addressed the issue of failure to train an officer in the use of a police dog in <u>Matthews v. Jones</u>, 35 F.3d 1046 (6th Cir. 1994). There, the police were in pursuit of an individual suspected of drunk driving. When the suspect fled into the woods, the

police unleashed a trained police dog with instructions to apprehend the feeling suspect. The suspect sustained dog bites and sued the municipality alleging that the town failed to train the officer and the dog and that this failure to train resulted in a deprivation of plaintiff's constitutional right to be free from excessive force. The court in <u>Matthews</u> rejected the claim, however. The court reasoned that for a failure to train case to stand, the plaintiff had to provide evidence that the training program is inadequate to the test an officer must perform, that the inadequacy is the result is deliberate indifference and that the inadequacy is closely related to or actually caused the plaintiff's injury.

Plaintiff has provided no such evidence in the present case. In fact, the evidence demonstrates that Officer Deeley's training was more than adequate. He and K9 Argo completed the course provided by the Connecticut State Police, Canine Unit, the same compulsory course taken by every trained police dog and handler in the state. It is undisputed that Officer Deeley and the police dog received high marks throughout the course. The dog was obedient and well trained. Plaintiffs have provided no evidence whereby a jury could conclude otherwise. Accordingly, plaintiffs should not be able to recover from the Borough of Naugatuck on the theory that the city failed to adequately train Officer Deeley and K9 Argo.

**IV.    THE PLAINTIFF'S STATE LAW CLAIMS SHOULD
BE REJECTED BECAUSE THEY ARE DERIVATIVE OF HIS
LEGALLYINSUFFICIENT FEDERAL CIVIL RIGHTS CLAIMS**

Should this Court find that the plaintiff has failed to establish the requisite elements of his federal claims, the jurisdictional basis for the plaintiff's pendent state claims will disappear. Where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claims are legally insufficient. See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997); Lennon, 66 F.3d at 426 ("Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution"); A. Aiudi & Sons v. Plainville, 862 F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject matter jurisdiction over state law claims).

The plaintiff's state law claims, assault, battery and trespass and violations of section 22-357 of the Connecticut General Statutes, arose from the same factual scenario as his federal claims. Am. Compl., Second Count, ¶¶ 1-21; Am. Compl., Sixth Count, ¶¶ 1-26. Accordingly, should the court grant summary judgment on the plaintiff's federal law claims, the court would lack subject matter jurisdiction over the plaintiff's state law claims, requiring that they be dismissed. See Monsky, 127 F. 3d. at 247; Lennon, 66 F.3d at 426; A. Aiudi & Sons, 862 F. Supp. at 745.

Even if the court were to retain jurisdiction over the state law claims, the defendants are entitled to summary judgment on the plaintiff's assault, battery and trespass claim (Second Count) for the following reasons.  The defendants were justified in the amount of physical force they actually used under Connecticut General Statutes § 53a-22:  Section 53a-122 provides

> a peace officer…is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense…or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest…

Conn. Gen. Stat. § 53a-22(b).

As indicated above, the defendants had reason to believe that Mr. Kromhout was armed.  Moreover, he was suspected of committing a violent crime, and known to be hostile to police officers.  Under the Connecticut Statute, the Naugatuck officers were justified in using the amount of force that they did, and thus should not be held liable for assault and battery.

The defendants are also entitled to summary judgment on plaintiff's trespass claim.  Am. Compl., Second Count.  The elements of a common law trespass action are well established.  "ownership or possessory interest in property; the physical invasion, entry or intrusion by defendant which affects the plaintiff's possessory rights; intent to do that which causes the invasion and a direct injury to the plaintiff's property. Avery v. Spicer, 90 Conn. 576 (1916).  Where, however, consent to enter the property has been given, there is no cause of action for trespass.  Connecticut Light &

Power v. Streckfus, No. CV95-0545198, 1995 Conn. Super. LEXIS 3221 (Nov. 17, 1995). As discussed above, Officer Smolicz testified at his deposition that Ms. Liguori provided him with consent to enter into the residence at 48 Washington Street. Because Ms. Liguori also resided there, she had the authority to do so, and Mr. Kromhout may not now assert a cause of action for trespass.

Finally, plaintiff also seeks to hold the defendants liable for violation of section 22-357 of the Connecticut General Statutes. Section 22-357 provides that "If any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage." Section 22-357 imposes strict liability on the owner or keeper of any dog that inflicts injury on another. Tryon v. Town of N. Branford, 58 Conn. App. 702, 719 (2000). In Tryon, however, the court concluded that the statute did not abrogate the government immunity typically enjoyed by municipalities. In particular, the court recognized that "a municipality itself was generally immune from liability for its tortuous acts at common law. . . ." Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 165 (1988). The Tryon court acknowledged that the state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. 58 Conn. App. at 720. The court concluded, however, that the legislature was not attempting to create such an exception when it enacted section 22-357. Accordingly, the doctrine of governmental immunity precludes the plaintiff from holding the Borough liable under Connecticut's dog bite statute.

The plaintiff also seeks to hold Officer Deeley liable under section 22-357, alleging that he was the owner and keeper of K9 Argo. Governmental immunity precludes the plaintiff from recovering against Officer Deeley under this statute, as well. The doctrine that determines the tort liability of municipal employees is well established. It is true that "Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. Evon v. Andrews, 211 Conn. 501, 505 (1989). However, "a municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . ." Burns v. Board of Education, 228 Conn. 640, 645 (1994).

Here, it cannot be said that Officer Deeley was performing a ministerial act. Although there is no exact definition, a discretionary act is generally recognized as one that requires the exercise of discretion or judgment impliedly or expressly granted by law. Evon, 211 Conn. at 505-07. On the other hand, a ministerial act "refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Id. Officer Deeley's decision to release K9 Argo was clearly an act that required his discretion and judgment. The action was certainly not ministerial. Accordingly, state law governmental immunity shields Officer Deeley from liability under section 22-357, as well. Summary judgment should be granted for the defendants with respect to the Sixth Count of plaintiff's Amended Complaint.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court grant this Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,
DEFENDANTS,
MICHAEL PURCARO, BART DEELEY and the
BOROUGH OF NAUGATUCK

By: _____
JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17849
MATTHEW FREIMUTH, ESQ.
Federal Bar Number Ct2524
UPDIKE, KELLY & SPELLACY, P.C.
One State Street, P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600

355797

45

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed First Class, in the United States mail, postage prepaid, this 15ᵗʰ day of March 2004 to the following:

Steven D. Jacobs, Esq.
Jacobs, Jacobs & Shannon
265 Orange Street.
New Haven, CT 06510

Michael P. McKeon, Esq.
Sullivan, Schoen, Campane &
   Connon, LLC
646 Prospect Avenue
Hartford, CT 06105-4286

By: _____

JAMES N. TALLBERG, ESQ.
Updike, Kelly & Spellacy, P.C.

355797                              46