### 3.   There Was No Constitutional Violation.

As noted in Section III(B)(1) of this memorandum, the plaintiff's constitutional claim against Officer Deeley is predicated upon his allegation that "Officer Deeley, in permitting Argo to attack and maim Mr. Kromhout as described above, used excessive force in apprehending Mr. Kromhout and placing him under arrest." Amended Complaint, ¶17. The plaintiff further asserts that Officer Deeley's purported conduct constituted a violation of the plaintiff's Fourth Amendment right to be "free from unreasonable searches and seizures." Id. As was discussed in Section III(B)(II) hereof, the Connecticut Superior Court previously determined that the officers' entry into and arrest of the plaintiff was appropriate. Specifically, Judge Cremins held:

> The Court concludes that under the – totality of the circumstances, the police had reasonable grounds to enter the apartment to effect a valid arrest based on exigent circumstances and a reasonable belief that an emergency existed.

Exhibit M, pp. 7-8. In his decision, Judge Cremins further Ms. Liguori's testimony that she had opened the door and let the police into the apartment. Id., p. 3. See also Exhibit D, 6/19/00 Hearing, C. Liguori Test., p. 70.[3] For the reasons already set forth in Section III(B)(2), *supra*, Judge Cremins' decision must be given preclusive effect.

With respect to the plaintiff's claim that Officer Deeley used "excessive force" in his apprehension, "determining whether the force used to affect a particular seizure is 'reasonable'

---

[3]It is undisputed that Ms. Liguori permitted the police to enter her apartment. See Exhibit G, p. 153.

25

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

under the Fourth Amendment requires a 'careful balancing of the nature and quality of the individual's Fourth Amendment interest against the countervailing governmental interests at stake.'" Jones v. City of Hartford, 285 F. Supp.2d 174, 181 (D. Conn. 2003)(quoting Graham v. Connor, 490 U.S. 386, 396, 109 s. Ct. 1865, 104 L.Ed.2d 443 (1989)). Whether the force employed was excessive is determined ""under objective standards of reasonableness.""" Jones, 285 F. Supp.2d at 181 (quoting Stephenson v. Doe, 332 F.2d 68, 77 (2d Cir. 2003), quoting in turn Saucier v. Katz, 533 U.S. 194, 201-202, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)). At the same time, "[r]easonableness is judged from the perspective of a 'reasonable officer on the scene,' not in hindsight." Jones, 285 F. Supp.2d at 181 (quoting Graham, 490 U.S. at 396).

In Saucier, the Supreme Court explained the appropriate test for determining the reasonableness of an officer's conduct as well as the underlying rationale:

> Because "police officers are often forced to  make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" . . . the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective . . . . We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene . . . . Graham sets forth a list of factors relevant to the merits of the constitutional excessive force claim . . . including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

533 U.S. at 205, 121 S. Ct. at 2158 (quoting Graham, 490 U.S. at 396, 397, 109 S. Ct. 1865)(internal citations omitted).

26

For the reasons set forth in Section III(B)(1) hereof, there is no factual basis for the plaintiff's claim that Officer Deeley's use of Argo constituted excessive force. Consequently, there is no colorable basis for the plaintiff's claim that Officer Deeley violated his Fourth Amendment rights. Even were one to assume, *arguendo*, that excessiveness was at issue, Officer Deeley's actions were clearly reasonable under the circumstances. The confluence of circumstances leading to and surrounding the plaintiff's apprehension was set forth by Judge Cremins in his decision denying the plaintiff's Motion to Suppress:

> Evidence was presented at the hearing from which the following facts could be found. Evidence included testimony and also the reports. One, the police were investigating a sexual assault allegedly involving the defendant. Two, the police had information that the defendant had been involved in another assault involving Carmella Liguori. Three, the victim of the sexual assault had stated to police that she had been told that the defendant was threatening to burn down the apartment building at 48 Washington Street in Naugatuck. Four, the police had information that the defendant was driving in what was described as a suspicious manner near the home of Carmella Liguori's mother on the evening of September 23, 1999. Five the police had information the defendant was possibly on parole from New York state and might be violent and possibly armed. Six, when the police arrived at the defendant's apartment and the door to the apartment was opened by the defendant, the testimony indicated that he had a knife in his hand. Number seven, the alleged victim was in the apartment with the defendant.

Exhibit M, pp. 7-8.

The plaintiff's actions were first brought to the Department's attention by Cynthia Jaschinsky, who gave a sworn statement to Officer Purcaro on September 23, 1999 in which she complained that the plaintiff had sexually assaulted her twice on September 22, 1999, that he had also physically assaulted Carmella Liguori earlier that day, September 23, and that he had

27

threatened Ms. Liguori's family. Exhibit A; Exhibit B, pp. 23-27, 41. In her sworn statement, Ms. Jaschinsky also warned:

> I know what [the plaintiff] has done in the past and it scares me. [The plaintiff] has told me that in the past he murdered his wife, has been arrested for explosives, and has spent most of his life in jail.

Exhibit A. Sgt. Smolicz took photographs of Ms. Jaschinsky's bruises. Exhibit C, p. 3. He then conducted an investigation of the plaintiff, discovering that he was wanted in New York for parole violation and that on November 2, 1998, the plaintiff's parole officer in New York had described him as "extremely violent with police officers and known to have weapons and explosives on his person (Use extreme caution)." Exhibit E, p. 2; Exhibit F, pp. 78, 95. Later that day, September 23, 1999, the police received another report that the plaintiff had assaulted Ms. Liguori, this one from her mother. Exhibit D, 6/16/00 Hearing, R. Smolicz Test., pp. 9-11.[4]

Upon reaching Ms. Liguori's apartment, Officer Purcaro believed that the plaintiff "was a dangerous person known to carry weapons." Exhibit B, p. 39. Similarly, Sgt. Smolicz believed that the plaintiff "was known to be dangerous, armed and dangerous," and that it was necessary to "use extreme caution." Exhibit F, p. 95. When the officers arrived at Ms. Liguori's apartment and the plaintiff opened the door, Sgt. Smolicz believed that he saw the plaintiff holding a knife alongside his leg. Id., p. 104-105. Sgt. Smolicz also saw Ms. Liguori, about whom the Department had received two reports of her having been physically assaulted by the plaintiff;

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Ms. Liguori's face was puffy, and she was crying. Id., 104-106. Consequently, when Officer Deeley was called in to search for the plaintiff with Argo, Officer Deeley was advised that the plaintiff "was armed with a knife." Exhibit H, p. 61.

By his own admission, the plaintiff slammed the apartment door shut as soon as Sgt. Smolicz made eye contact and despite the fact that Sgt. Smolicz had not said anything and that the closest he came to the plaintiff was three-to-four feet. Exhibit G., pp. 100, 102. By his further admission, after closing the door the plaintiff told Ms. Liguori that he was leaving and within "7.2 seconds" he had hidden himself under a king-sized bed in a darkened bedroom. Id., pp. 103, 110, 112, 130. The plaintiff was seeking to flee the police because he was in violation of his parole. Id., p. 115. See also Exhibit D, 6/19/00 Hearing, C. Liguori Test., pp. 69-70. Once Ms. Liguori had opened the door and permitted the police to enter her apartment, they believed the plaintiff posed an extreme danger to others, was wanted for felony charges, and posed a flight risk. Exhibit E, p. 3. Furthermore, despite two warnings from Officer Deeley that he would release Argo, the plaintiff did not respond and remained hidden. Exhibit G, p. 109. See also Exhibit F, pp. 119-20, Exhibit H, pp. 63, 79; Exhibit K, p. 87. Finally, as described, supra, the plaintiff attempted to evade Argo and then fought the canine. Exhibit G, pp. 134, 135.

When applying the Graham and Saucier tests for determining whether the use of force violated the Fourth Amendment, to the undisputed facts in this case, the plaintiff's claim that

---

[4]In fact, the plaintiff admitted having assaulted Ms. Liguori. Exhibit G, p. 72.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Officer Deeley violated his Fourth Amendment rights must fail as a matter of law. And, by extension, the plaintiff's claim that Sgt. Smolicz violated his constitutional rights by failing to intervene must also fail.

**4.    Smolicz Did Not Have A Realistic Opportunity To Intervene.**

Even were one to assume, *arguendo*, that the plaintiff had established one of the three prongs of the Anderson test, the Second Circuit has held that "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d at 557, *quoted in* Jones, 285 F. Supp.2d at 182-83. See also O'Neill v. Krzeminski, 839 F.2d 9, 10-11 (2nd Cir. 1988). The plaintiff bears the burden of proving that Mr. Smolicz had this "realistic opportunity to intervene." Jones, 285 F. Supp.2d at 182-83. Given the undisputed facts in this matter, no reasonable jury could conclude that Mr. Smolicz had such opportunity.

According to Officer Deeley, the time that elapsed between when the plaintiff's struggle with Argo began and when he handcuffed the plaintiff and called off Argo was "seconds." Exhibit H, p. 70. In fact, when pressed as to whether it could have been minutes, Officer Deeley rejected that possibility. Id., p. 70. To the contrary, Officer Deeley testified: "Everything happened in the blink of an eye." Id., p. 71. Officer O'Mara, the only policeman on the scene who was not named as a defendant, testified that the time that elapsed between when the plaintiff began struggling with Argo and when Argo was called off was "two to three seconds, maybe

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

four seconds." Exhibit K, p. 88. Finally, when Officer Purcaro was asked "how long did Argo continue to bite Mr. Kromhout," he responded: "It all happened pretty quick so I am not sure about time, a few seconds, maybe 10, 15 seconds. I am not sure." Exhibit B, p. 66.

Whether Mr. Smolicz had a reasonable opportunity to intervene must also be considered in the context of the Department's canine policy. As noted, the Department had a comprehensive canine policy in effect on September 23, 1999. Exhibit I; Exhibit J. Mr. Smolicz was aware of those policies and was required to follow them. Exhibit I, ¶9. The Department's policy provided in part:

> Canine deployment is the responsibility of the canine handler. A canine handler best knows the capabilities and limitations of his dog and is trained in tactical canine deployment situations. Supervisors should consider any advice relating to the deployment of a canine offered by the handler.

Exhibit J, p. 3, ¶5. As a member of the Canine Unit and Argo's handler, Officer Deeley was solely authorized to determine the manner in which Argo would be deployed to effectuate the plaintiff's apprehension. Exhibit I, ¶ 8. In contrast, Mr. Smolicz was not a member of the Canine Unit; consequently he had no supervisory authority over Officer Deeley's deployment of Argo, nor could he control or give commands to Argo. Exhibit I, ¶¶5-7.

The Department's canine policy also provides: "During the search the canine handler should be accompanied by another officer and this officer should follow any instructions given to him by the canine handler." Exhibit J, p. 7, Building Searches. See also Exhibit I, ¶14.

31

Additionally, Departmental policy states that if there is an altercation involving the handler, "assisting officers should stand back and wait for instructions from the canine handler. The canine may bite officers coming to assist." Exhibit J, p. 8, Handler Protection. The officers on the scene were aware of this. Exhibit B, p. 82; Exhibit H, pp. 75-76; Exhibit K, pp. 82-83. Furthermore, under Departmental policy:

> In the event the canine handler is injured and the canine is not secured, use extreme caution in the approach of the handler. The canine may take the approach of assisting personnel as a threat and defend the handler by way of an attack as he is trained to do.

Exhibit J, p. 11, Injured Canine Handler. See also Exhibit I, ¶15. Similarly, Departmental policy directs: "Personnel will not interfere with the canine team and their objective." Exhibit J, p. 12, General Rules and Conduct, ¶6. See also Exhibit I, ¶13.

In conjunction with both the brief duration of the plaintiff's struggle with Argo and the strictures of the Department's canine policy is the fact that this was the first time that Mr. Smolicz had seen someone resist a canine rather than immediately surrender. Exhibit F, pp. 128-29. In fact, Argo's handler, Officer Deeley, testified that the September 23, 1999 apprehension of the plaintiff was the only time that Argo had bitten an individual in more than one spot. Exhibit H, pp. 89-90. And, this anomaly resulted from the plaintiff's struggle. Id., pp. 67-68, 89. See also Exhibit K, pp. 70-71. Even the plaintiff admitted that Argo did not bite him until he tried to pull himself away from the canine. Exhibit G, p. 134. Furthermore, the plaintiff

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

admitted that he attempted to fight off Argo and, in any event, Argo's bites "weren't deep, gouging bites. They were just like hard nips that broke the skin." Id., p. 135.

As previously cited, the Supreme Court has held:

> Because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" . . . the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective . . . . We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene.

Saucier v. Katz, 533 U.S. at 205, 121 S. Ct. at 2158 (quoting Graham, 490 U.S. at 396, 397, 109 S. Ct. 1865)(internal citations omitted).  In the present matter, it is undisputed that Argo's struggle with the plaintiff lasted, at most, ten-to-fifteen seconds and was over "in the blink of an eye."  Exhibit B, p. 66; Exhibit H, p. 71.  It is undisputed that Mr. Smolicz was approximately ten-to-twelve feet away from the area where the plaintiff, Officer Deeley and Argo were. Exhibit B, p. 65.  It is undisputed that Mr. Smolicz was subject to Departmental policies that instructed him in a situation such as this to maintain a safe distance and defer to Officer Deeley's commands.  Exhibit I, ¶¶5-7; Exhibit J.  It is undisputed that in both Mr. Smolicz's and Officer Deeley's experiences, a suspect had never struggled with a canine such as the plaintiff did with Argo.  There was, then, no precedent against which to assess the extent of Argo's attempts to apprehend the plaintiff.  And, even if there had been, again, the entire incident was over in

33

seconds and the plaintiff himself has admitted that Argo's bites "were just like hard nips that broke the skin." Exhibit G, p. 135

Given these undisputed facts, no reasonable jury could conclude that Mr. Smolicz "had a realistic opportunity to intervene to prevent the harm." Anderson, 17 F.3d at 557. Furthermore, even if Mr. Smolicz had had the time and opportunity to intervene, no reasonable jury could conclude that Mr. Smolicz had a reasonable belief that there was reason to intervene. Thus, summary judgment should enter on Mr. Smolicz's behalf with respect to the plaintiff's Section 1983 claim in the First Count of the Complaint.[5]

## C. The Plaintiff's Section 1988 Claim Is Derivative Of And Dependant Upon The Plaintiff's Section 1983 Claim.

Under Section 1988, a court may award attorney's fees to a party that prevails upon a

---

[5]In his Amended Complaint, the plaintiff alleges: "At all times mentioned herein, defendants Rick R. Smolicz, Michael Purcaro, and Bart Deeley were duly appointed officers of the police department of Naugatuck, Connecticut, *acting in their official capacities.*" Id., ¶2 (emphasis added). Furthermore, at no point in his Complaint does the plaintiff assert that he is suing Mr. Smolicz in his individual capacity. Consequently, the doctrine of qualified immunity is not applicable. Nonetheless, had the plaintiff sought to hold Mr. Smolicz liable in his individual capacity, he would be immune from suit. In Saucier, the Supreme Court acknowledged "that reasonable mistakes can be made as to the legal constraints on particular police conduct." 533 U.S. at 205, 121 S. Ct. at 2158. Thus, "[a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances." Id. Qualified immunity "operates in this case, then, just as it does in others, to protect officers from the sometimes 'hazy border between excessive and acceptable force.'" 533 U.S. at 206, 121 S. Ct. at 2158 (quoting Priester v. Riviera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000)). "Government officials 'enjoy qualified immunity when they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.'" Tenenbaum v. Williams, 193 F.3d 581, 596 (2nd Cir. 1999)(quoting Young v. County of Fulton, 160 F.3d 899, 903 (2nd Cir. 1998))(internal quotation marks and citations omitted)(alteration in original). Based upon the undisputed facts in this matter, Mr. Smolicz would be entitled to qualified immunity under either prong of the Tennebaum test were he named in his individual capacity.

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

claim brought, *inter alia*, pursuant to 42 U.S.C. §§1981 and 1983. Thus, the plaintiff's Section 1988 claim in the First Count is derivative of and dependant upon the plaintiff prevailing upon either his Section 1981 or Section 1983 claim. Consequently, if the plaintiff does not prevail – for example, should summary judgment enter on Mr. Smolicz's behalf on both the plaintiff's Section 1981 and 1983 claims – then his Section 1988 claim must also be dismissed. Therefore, in conjunction with his request that summary judgment enter on his behalf with respect to the plaintiff's Section 1981 and 1983 claims, Mr. Smolicz requests that the court enter summary judgment in his favor on the plaintiff's Section 1988 claim.

    **D.**    **To The Extent That The Plaintiff Has Alleged A Violation By Smolicz Of The Connecticut Constitution, He Has Failed To Provide A Cognizable Basis For Such Claim.**

In his prefatory allegation, the plaintiff asserts without further specificity that the "police officers" violated 42 U.S.C. §§1981, 1983 and 1988 as well as "Articles First, §§7, 9, and 10 of the Constitution of the State of Connecticut." Amended Complaint, ¶1. Later in the Complaint, the plaintiff alleges that Officer Deeley violated Article First, §7 of the Connecticut Constitution, Id., ¶17, but he fails to make any similar claim against Mr. Smolicz. To the contrary, the plaintiff limits his specific allegations against Mr. Smolicz to Sections 1981, 1983 and 1988. Id., ¶19. At the same time, the plaintiff has alleged that Mr. Smolicz "entered Mr. Kromhout's residence without a warrant and without the consent of either Mr. Kromhout or Carmela Liguori, with whom Mr. Kromhout lived." Id., ¶6. Therefore, although the plaintiff has failed to

35

expressly assert a violation by Mr. Smolicz of the Connecticut Constitution, Mr. Smolicz will briefly address these claims.

Article I, §7 constitutes Connecticut's counterpart to the Fourth Amendment's protection against unreasonable searches and seizures. Article I, §9 protects against unlawful arrests. With respect to Article I, §7, the "same standard of review applies to . . . claims under both the state and federal constitutions." State v. Hoth, 50 Conn. App. 77, 81, 718 A.2d 28 (1998)(citing State v. Blades, 225 Conn. 609, 624, 626 A.2d 273 (1993)). And, in accordance with federal precedent, "[a]bsent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." Hoth, 50 Conn. App. at 81 (citing Steagald v. United States, 451 U.S. 204, 101 S. Ct. 1642, 68 L.Ed.2d 38 (1981)). It is undisputed in the present case that Ms. Liguori invited the officers, including Mr. Smolicz, into her residence at 48 Washington Street. Both the plaintiff and Ms. Liguori have testified to this. Exhibit D, 6/19/00 Hearing, p. 70; Exhibit G, p. 153. See also Exhibit B, p. 53; Exhibit E, p. 2. Additionally, Judge Cremins made this determination during the hearing on the plaintiff's Motion to Suppress. Exhibit M, p. 3. As it is undisputed that Ms. Ligouri consented to the police entering her residence, the plaintiff cannot maintain a claim under Article I, §7. In any event, Judge Cremins held that "the police had reasonable grounds to enter the apartment to effect a valid arrest based on exigent circumstances and a reasonable belief that an emergency existed." Exhibit M, pp. 7-8. Judge Cremins having already decided the same issues that

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326

underlie the plaintiff's Article I, §7 claim, that decision has preclusive effect on the present matter. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L.Ed.2d 56 (1984)(citing 28 U.S.C. §1738); Golino v. City of New Haven, 950 F.2d 864, 869 (2nd Cir. 1991), cert. denied, 505 U.S. 1221, 112 S. Ct. 3032, 120 L.Ed.2d 902 (1992).

The issue upon which the plaintiff predicates his Article I, §9 claim has also been determined by the Connecticut Superior Court. Judge Cremins held that the officers effected "a valid arrest," Exhibit M, pp. 7-8, and, again, that decision must be given preclusive effect. Furthermore, this court has held that claims brought for unlawful arrest pursuant to Article I, §9 are to be adjudicated under the same standard applied to similar claims brought under 42 U.S.C. §1983. Birdsall v. City of Hartford, 249 F. Supp.2d 163, 172 (D. Conn. 2003). Under that standard, "in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor." Id., at 171 (citing Roesch v. Otarola, 980 F.2d 850, 852 (2nd Cir. 1992)). "A criminal proceeding terminates in favor of the plaintiff only when its 'final disposition is such as to indicate the accused is not guilty.'" Birdsall, 249 F. Supp.2d at 171 (quoting Singleton v. City of New York, 632 F.2d 185, 193 (2nd Cir. 1980)). A nolle is insufficient. Birdsall, 249 F. Supp.2d at 171. In this case, the plaintiff has failed to allege a favorable outcome of his criminal proceeding.

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326

Therefore, to the extent that the plaintiff has alleged that Mr. Smolicz violated provisions of the Connecticut Constitution, summary judgment should enter on his behalf.[6]

### E.    The Plaintiff Has Failed To State A Claim Against Smolicz For Assault, Battery And Trespass.

In the Second Count of his Amended Complaint, the plaintiff alleges:  "In permitting Argo to attack and maim Mr. Kromhout as described herein, the defendants committed an assault, battery, and trespass." Id., ¶20.  There is, however, neither a factual nor a legal basis for the plaintiff's claims.

### 1.    Assault and Battery

It is undisputed that Mr. Smolicz never struck or threatened to strike the plaintiff.  In fact, the plaintiff has not even alleged that Mr. Smolicz did so.  Additionally, Officer Deeley testified that Mr. Smolicz was approximately ten-to-twelve feet away from where Argo was struggling with the plaintiff, and all three other officers at the scene agreed that Mr. Smolicz did not participate in Officer Deeley's attempts to restrain the plaintiff.  Exhibit B, p. 66; Exhibit H, pp. 75, 77; Exhibit K, pp. 73-74.  In short, Mr. Smolicz never assaulted or battered the plaintiff.

---

[6]As noted, the plaintiff also makes reference to Article I, §10 in the first paragraph of his Amended Complaint but never cites it again.  In any event, Article I, §10 provides that individuals will have open access to the courts to redress alleged wrongs.  Thus, Section 10 is patently inapplicable to Mr. Smolicz and to the extent that the Amended Complaint can be construed as to allege such a claim, summary judgment should enter on his behalf.  Furthermore, with respect to all three of the plaintiff's possible state constitutional claims, as well as his common law claims in the Second Count, against Mr. Smolicz, should the court enter summary judgment on the plaintiff's federal claims against Mr. Smolicz, it should decline to exercise continued pendent jurisdiction over any remaining state claims in either the First or Second Counts.

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO.  62326

In <u>Jones v. City of Hartford</u>, 285 F. Supp.2d 174 (D. Conn. 2003), Judge Hall noted a Connecticut Supreme Court case from 1910 and a Connecticut Superior Court decision from 1936 that held in certain circumstances individuals who only gave consent to an assault and battery could be found liable therefore.  <u>Id.</u>, at 188-89.  Judge Hall declined to apply such reasoning in <u>Jones</u>, however, noting that in that case there was no evidence that the individual officers either "directed [the other officer] to abuse the plaintiff or affirmatively acted to aid [the officer] in his actions."  <u>Id.</u>, at 189.  Similarly, in the present case, there is no evidence that Mr. Smolicz either directed Officer Deeley to have Argo purportedly "attack and maim" the plaintiff or affirmatively acted to aid Officer Deeley.

As noted, it is undisputed that Mr. Smolicz played no role in Argo's struggle with the plaintiff.  Furthermore, it is undisputed that as Argo's handler and a member of the canine unit, Officer Deeley had the sole authority under Departmental policy to determine whether and in what manner Argo would be deployed in effectuating the plaintiff's apprehension.  Exhibit I, ¶ 8.  Sgt. Smolicz was not a member of the Canine Unit and thus had no supervisory authority over the manner and method in which Officer Deeley deployed his canine partner, Argo, nor did he control or give commands to Argo.  <u>Id.</u>, ¶¶5-7.  Furthermore, the Department's policy on the use of canines is unambiguous as to who was responsible for the deployment of Argo:

> Canine deployment is the responsibility of the canine handler.  A canine handler best knows the capabilities and limitations of his dog and is trained in tactical canine

39

deployment situations.    Supervisors should consider any advice relating to the deployment of a canine offered by the handler.

Exhibit J, p. 3, ¶5.  There is, then, no basis for the plaintiff's assault and battery claims against

Mr. Smolicz, and thus summary judgment should enter on his behalf.

### 2.    Trespass

The concept of "trespass" has been defined as "[a]n unlawful interference with one's person, property or rights."  *Black's Law Dictionary* (5th Ed. Abridged  1983), p. 780.  In Connecticut, "an unintentional trespass to the person . . . if it be the direct and immediate consequence of a *force* exerted by the defendant *wantonly* or imposed *without the exercise by him of due care*, would make him liable for resulting injury."  Smith v. New Milford Hosp., Inc., 2000 WL 1686953 *1 (Conn. Sup. Oct. 19, 2000)(emphasis in original), a copy of which is appended hereto.  By its very nature, trespass consists of action, not inaction, yet in this case, the plaintiff's claims against Mr. Smolicz are based upon what the plaintiff purports was his *inaction* rather than any actions.  After all, it is undisputed that Mr. Smolicz never touched or at any time ever came closer than three-to-four feet to the plaintiff.  Exhibit G, p. 102; Exhibit B, p. 65. Consequently, he did not exert any force upon the plaintiff.  Thus, there is no basis for the plaintiff's trespass claim against Mr. Smolicz, and summary judgment should enter on his behalf.

## IV.    CONCLUSION

Therefore, for the reasons set forth herein, the defendant Rick R. Smolicz respectfully

40

requests that this court enter summary judgment on his behalf with respect to the plaintiff's

claims against him in the First and Second Counts of the plaintiff's Amended Complaint.

THE DEFENDANT,
RICK R. SMOLICZ,

By _____
Michael P. McKeon
Federal Bar No. ct02290
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, Connecticut  06105-4286
Telephone:  (860) 233-2141
Facsimile:  (860) 233-0516
E-mail:  mmckeon@sscc-law.com

41

## CERTFICATION

This is to certify that a copy of the foregoing Memorandum of Law in Support of Defendant Rick R. Smolicz's Motion for Summary Judgment Statement was sent via express mail, overnight delivery, on the 18th day of March 2004 to Steven D. Jacobs, Esq., Jacobs, Jacobs & Shannon, P.C., 265 Orange Street, New Haven, Connecticut  06510 and to James Tallberg, Updike, Kelley & Spellacy, One State Street, Hartford, Connecticut  06103.

Michael P. McKeon

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO.  62326



Not Reported in A.2d
28 Conn. L. Rptr. 413
**(Cite as: 2000 WL 1686953 (Conn.Super.))**

**H**

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Heather SMITH
v.
NEW MILFORD HOSPITAL, INC. et al.

**No. CV000081384S.**

Oct. 19, 2000.

Opinion Title: *MEMORANDUM OF DECISION*

CREMINS.

**\*1** In this action the defendants New Milford
Hospital, Inc. and New Milford Hospital Health
Care, Inc. move to strike counts two, three, and four
of the plaintiff's second amended complaint dated
June 5, 2000. The defendants argue that counts two,
three and four of the second amended complaint fail
to state legally cognizable or legally sufficient cause
of action. The court agrees.

The purpose of a motion to strike is "to contest ...
the legal sufficiency of the allegations of any
complaint ... to state a claim upon which relief can
be granted. In ruling on a motion to strike, the court
is limited to the facts alleged in the complaint. The
court must construe the facts in the complaint most
favorably to the plaintiff." (Internal quotation marks
omitted.) *Novametrix Medical Systems, Inc. v. BOC
Group, Inc.,* 224 Conn. 210, 214-15, 618 A.2d 25,
(1992). "[I]f the facts provable under [the]
allegations ... support ... a cause of action, the
motion to strike must fail." *Mingachos v. CBS, Inc.,*
196 Conn. 91, 109, 491 A.2d 368, (1985).

The plaintiff has filed a revised second amended
complaint that "incorporates [into count one]
certain non-duplicative count two allegations." (Pl.'s
Mem. Opp'n Mot. to Strike # 2.). Therefore, the
court now considers the defendant's motion to strike
relative only to the third (the breach of contract
count) and fourth count (the trespass in the nature of
an assault count) of the plaintiff's "Revised Second

Amended Complaint" dated June 5, 2000.

The third count of the complaint sounds in breach
of an implied contract. The plaintiff argues that an
implied contract was established the "instant" the
plaintiff "entered the treatment area of the hospital
for purposes of treatment" and citing *Composano v.
Claiborn,* 2 Conn.Cir.Ct. 135, 196 A.2d 129 (1963)
and *Rumbin v. Baez,* 52 Conn.App. 487, 727 A.2d
744, (1999). The holdings in these cases do not
support the plaintiff's position. In *Composano,* the
court held that a breach of contract claim is "a
distinct claim that *may arise* and *may exist* where
the physician and patient contract for a *specific
result.*" See *Composano v. Clairborn, supra,* 137.
The plaintiff does not allege any contract for any
specific result. In *Rumbin v. Baez,* the court also
found that Connecticut does not recognize a
patient's cause of action for breach of contract
except where the parties have contacted for a
specific result. *Rumbin v. Baez, supra,* 52
Conn.App. 491. Because there is no allegation that
the parties contracted for a specific result, the claim
in count three is essentially a medical malpractice
claim clothed in the language of contact. Therefore,
the motion to strike the third count of plaintiff's
June 5, 2000 amended complaint is granted.

In the fourth count of the complaint, the plaintiff
alleges that the taking of a blood sample at the
hospital with an intravenous needle constitutes a
trespass in the nature of an assault, that the
procedure was invasive and painful that the sample
was taken without her permission or consent and
that the sample was not obtained to determine if the
plaintiff was pregnant but to determine her blood
alcohol level. (Compl., Fourth Count, ¶¶ 5-9.)

**\*2** Where is the "**trespass in the nature of an
assault**"? In deciding a motion to strike the court is
limited "to a consideration of the facts alleged in the
complaint." *Doe v. Marselle,* 38 Conn.App. 360,
364, 660 A.2d 871, (1995), rev'd on other grounds,
236 Conn. 845, 675 A.2d 835, (1996). "[A]n
unintentional **trespass** to the person ... if it be the
direct and immediate consequence of a *force*
exerted by the defendant *wantonly* or imposed
*without the exercise by him of due care,* would
make him liable for resulting injury. (Emphasis
added.) *Welch v. Durand,* 36 Conn. 182, 185."
*Lentine v. McAvoy,* 105 Conn. 528, 530-31, 136 A.
76, (1927); The plaintiff has not alleged any wanton

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 413
**(Cite as: 2000 WL 1686953 (Conn.Super.))**

Page 2

exercise of force by the defendant nor does the plaintiff allege any failure by the defendant to use due care. The court does not agree that "the word 'force' **defines** the hospital Emergency Room setting" or that "by definition, any medical procedure performed without an informed consent is forceful." (See Pls. Mem. in Opp'n to Mot. to Strike at 3.)

Facts sufficient to support a claim of trespass have not been set forth. The motion to strike count four is granted.

2000 WL 1686953 (Conn.Super.), 28 Conn. L. Rptr. 413

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works