**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DAVID S. KROMHOUT,** | : | **CIVIL NO. 3:01 CV 1636 (SRU)** |
| **Plaintiff** | : | |
| **VS.** | : | |
| | : | |
| **RICK R. SMOLICZ,** | : | |
| **MICHAEL PURCARO** | : | |
| **BART DEELEY** | : | |
| **TOWN OF NAUGATUCK.** | : | |
| **Defendants** | : | **JUNE 22, 2004** |

**LOCAL RULE 56(A)2 STATEMENT IN RESPONSE TO
LOCAL RULE 56(A)1 STATEMENT OF DEFENDANTS
BART DEELEY, MICHAEL PURCARO AND BOROUGH OF NAUGATUCK**

I.      Pursuant to Local Rule 56(A)2 of the United States District Court for the District

of Connecticut, the plaintiff hereby responds to the Local Rule 56(A)1 Statement of

defendants Bart Deeley, Michael Purcaro and Borough of Naugatuck as follows:

 1.      Paragraph 1 is admitted.

 2.      Paragraph 2 is admitted.

 3.      Paragraph 3 is admitted.

 4.      Paragraph 4 is admitted.

 5.      Paragraph 5 is admitted.

 6.      Paragraph 6 is admitted.

7.    Denied.  According to the training logs of the 80th K9 Training Troop, to which Officer Deeley belonged, the training week was approximately 40 hours long. The program began on March 23, 1998 and ended June 25, 1998.  Exhibit H.

8.    Paragraph 8 is admitted.

9.    Paragraph 9 is admitted.

10.   Paragraph 10 is admitted.  However, it must also be noted that Argo repeatedly broke from command, broke from position, did not bark, and assaulted without command.  Exhibit I.

11.   Paragraph 11 is admitted.

12.   Paragraph 12 is admitted.

13.   Paragraph 13 is admitted.

14.   So much of paragraph 14 as states that the Borough of Naugatuck's canine policy includes policies concerning searches for suspects.  As for the statement that "[t]he policy concerns all aspects of the use of the police dog", it is unsupported by either evidence that would be admissible at trial or the affidavit of a witness competent to testify as to this fact.  Officer Deeley, whose affidavit is offered in support of this statement, has not been duly qualified as an expert witness on the subject of canine

2

training and use.  Indeed, he is qualified to testify only to what he learned.

15.     Paragraph 15 is denied.  Officer Deeley equates the term "apprehend" with "bite."  T. Deposition of Bart Deeley, August 22, 2002 at 13, 64.  The Borough's canine usage policy does not specify that a K-9 may be used to apprehend, i.e. bite, a suspect when that suspect is potentially armed.  Plaintiff's Exhibit F at 7.  To the contrary, it provides that [i]f the suspect is hidden or barricaded, the canine will alert the handler to his location."  Id.

16.     Paragraph 16 is denied.  See paragraph 15, above.

17.     Absent the affidavit of a duly qualified expert witness on the proper procedure for using a K-9 to apprehend, i.e. bite, a suspect, the plaintiff denies that the stated procedure is, indeed, proper.  The plaintiff admits that Officer Deeley attests to having been instructed in this manner.

18.     The plaintiff admits that Officer Deeley claims to have been trained in this manner.  He does not admit that allowing a canine to apprehend, i.e. bite, a suspect who does not give himself up is in keeping with proper canine usage procedure.  In fact, it is contrary to the Borough's canine usage policy.  Plaintiff's Exhibit F, supra at 7.

19.     The plaintiff admits that this is the manner in which Officer Deeley claims

3

that the dog was trained.

20.    Paragraph 20 is admitted.

21.    Paragraph 21 is admitted.

22.    The plaintiff admits that the K9 Usage Log contains an entry for September 23, 1999 indicating that K9 Argo was used that day to apprehend David Kromhout.  The plaintiff denies that the K9 Usage Log also indicates that Mr. Kromhout was a suspect in a sexual assault investigation.  Exhibit G.

23.    Paragraph 23 is admitted.

24.    Paragraph 24 is admitted.

25.    Paragraph 25 is admitted.

26.    Paragraph 26 is admitted.

27.    Paragraph 27 is admitted.

28.    Paragraph 28 is admitted.

29.    Paragraph 29 is admitted.

30.    Admitted that Cynthia Jashinsky reported to Officer Purcaro on August 23, 1999 at approximately 6:30 p.m. that Carmela Liguori had been assaulted by Mr. Kromhout earlier that day.

4

31.     Admitted that Ms. Jashinsky, in her statement to the Naugatuck Police Department of September 23, 1999, wrote "Earlier today my friend Carmella Liguori was physically assaulted by Dave and he threatened her family and kids . . . "

32.     Admitted that Ms. Jashinsky reported to Officer Purcaro that "she [had] heard through a third party, that Kromhout made the comment he was going to burn down 48 Washington St., with the children in it, if they filed a complaint with the Police Dept."

33.     Paragraph 33 is admitted.

34.     Paragraph 34 is admitted.

35.     Paragraph 35 is admitted.

36.     Paragraph 37 is denied.  Defendant Smolicz invented these facts in order to justify the degree of force that was used on Mr. Kromhout during his arrest on September 23, 1999.  The basis for this assertion is as follows:

•      Defendant Smolicz claims to have learned through the NCIC database that David Kromhout was a dangerous felon and a fugitive with a history of acting violently toward police who was known to possess weapons and explosives.  T. Deposition of Rick R. Smolicz, September 12, 2002 at 77.

However, the NCIC database only contains information concerning an individual's prior convictions, including the date of conviction, the nature of the charge of conviction, and the disposition. It does not contain historical information about the individual's character and tendencies.

• Defendant Smolicz claims to have obtained historical information concerning Mr. Kromhout's character and tendencies through the department's CAD system. T. Deposition of Rick R. Smolicz, supra at 79. However, the "CAD" system ("Computer-Aided Dispatch") is merely a repository for basic facts concerning each matter that has been logged in, e.g. the case number, dispatch time(s), the identity of the dispatched and responding officers, the identity of the dispatcher, the time when the call has been cleared, whether the investigating officer is to complete an incident report, whether a K-9 was used during the incident. T. Deposition of Shelley Nardozzi, September 12, 2002 at 17-36. The historical information about Mr. Kromhout which Defendant Smolicz claims to have obtained prior to the events which occurred at 48 Washington Street, Naugatuck, Connecticut on the night of September 23, 1999 would not

6

have come from the CAD system.

• Defendant Smolicz does not recall whether in September 1999 the Naugatuck Police Department had a method for cataloguing old case/incident reports, such as the report of Mr. Kromhout's 1998 arrest. T. Deposition of Rick R. Smolicz, supra at 79-80.

• When pressed for the source of the information about Mr. Kromhout's character and tendencies, defendant Smolicz testified that the information came from the report contained in the Naugatuck Police Department file of Case No. 98-27427. Id. at 80. However, defendant Smolicz testified differently at the Suppression Hearing held in the matter of State of Connecticut vs. David Kromhout, Docket No. CR99-0284087:

> Q     What, what did you try to do with the name, when you learned the name of David Kromhout:
>
>                    *              *              *
>
> A     Started to research our, our in-house data base computer. Started to run it through that, also ran it, also ran it through the NCIC computer, which is a national crime computer which has criminal histories on Criminal [sic] history, motor vehicle, stolen cars, missing person; everything on there.

T. Suppression Hearing, June 16, 2000 at 7.

7

37.     Paragraph 37 is denied.  See response to paragraph 36.

38.     Paragraph 38 is denied.  See response to paragraph 36.

39.     Paragraph 39 is denied.  See response to paragraph 36.

40.     Paragraph 40 is admitted.

41.     Paragraph 41 is admitted.

42.     Paragraph 42 is admitted.

43.     Paragraph 43 is admitted.

44.     Paragraph 44 is admitted.

45.     Paragraph 45 is admitted.

46.     Paragraph 46 is admitted.

47.     Paragraph 47 is admitted.

48.     Paragraph 48 is denied.  T. Deposition of David Kromhout, August 13, 2002 at 132, Testimony of Carmela Liguori, T. Suppression Hearing, June 19, 2000 at 45.

49.     The plaintiff admits that defendant Smolicz has testified that he believed that Ms. Liguori was crying at the time the door to her apartment was opened.  He has also testified alternatively that at the time the apartment door was opened Ms. Liguori

8

was in the foreground (Report of Sergeant Rick Smolicz, September 23, 1999, Exhibit J) and the background (T. Suppression Hearing, June 16, 2000 at 36-40, T. Deposition of Rick R. Smolicz, supra at 101).

50.    Paragraph 50 is admitted.

51.    Paragraph 51 is admitted.

52.    Paragraph 52 is admitted.

53.    Paragraph 53 is admitted.

54.    Paragraph 54 is admitted.

55.    Paragraph 55 is admitted.

56.    Paragraph 56 is admitted.

57.    Paragraph 57 is admitted.

58.    Paragraph 58 is admitted.

59.    Paragraph 59 is admitted.

60.    The plaintiff admits that Officer Deeley has testified that he was advised by Sergeant Smolicz that he believed that Mr. Kromhout was armed with a knife.  The plaintiff does not admit the truth of this statement.

61.    Paragraph 61 is admitted.

9

62.    Paragraph 62 is admitted.

63.    Paragraph 63 is admitted.

64.    Paragraph 64 is admitted.

65.    Paragraph 65 is admitted.

66.    The plaintiff admits that this was Officer Deeley's testimony.

67.    Paragraph 67 is admitted.

68.    Paragraph 68 is admitted.

69.    The plaintiff admits that this was Officer Deeley's testimony.

70.    Paragraph 70 is denied.  Contrary to Officer Deeley's affidavit, Mr.

Kromhout was already prone on the ground, struggling to protect himself from Argo.  T.

Deposition of David Kromhout, August 13, 2002 at 133-135.  While on the ground,

struggling to protect himself from Argo, Mr. Kromhout was struck repeatedly in the face

by Officer Deeley.  Id. at 135.

71.    Paragraph 71 is denied.  T. Deposition of Bart Deeley, August 22, 2002 at

68, 73.

72.    Paragraph 72 is admitted.

73.    Paragraph 73 is admitted.

74.     Paragraph 74 is admitted.

75.     Paragraph 75 is admitted.

76.     Paragraph 76 is admitted.

77.     Paragraph 77 is admitted.

78.     Paragraph 78 is admitted.

79.     Paragraph 79 is admitted.

80.     Paragraph 80 is admitted.

81.     Paragraph 81 is admitted.

82.     Paragraph 82 is admitted.

83.     Paragraph 83 is admitted.

84.     Paragraph 84 is admitted.

85.     Paragraph 85 is admitted.

86.     The plaintiff admits that Dr. Couture ordered a blood test, and that the test revealed Mr. Kromhout's ethyl alcohol level (ETOH) to be 119. The plaintiff further admits that an ethyl alcohol level of 119, when correlated to a blood alcohol reading, exceeds the permissible blood alcohol level of a motor vehicle operator in the State of Connecticut.

11

87.   Dr. Couture has not been duly qualified as an expert witness on the subjects of converting ETOH readings to blood alcohol readings and extrapolating backward to determine the ETOH level of an individual one hour prior to the administration of the ETOH test.  Therefore, this item is not properly included in the defendants' Local Rule 56(A)(1) Statement.

88.   Dr. Couture has not been duly qualified as an expert witness in the field of toxicology.  Absent such qualification, his opinions concerning the effect of alcohol on an individual are inadmissible.  Furthermore, the defendants have not laid a proper foundation for the admissibility of the opinion expressed in this paragraph.  As this opinion is, without more, inadmissible, its inclusion in the defendants' Local Rule 56(A)(1) Statement is improper.

89.   Paragraph 89 is admitted.

90.   Paragraph 90 is admitted.

91.   Paragraph 91 is admitted.

92.   The plaintiff admits that this is Officer Deeley's testimony.

93.   Paragraph 93 is admitted.

94.   Paragraph 94 is admitted.

95.     Paragraph 95 is admitted.

96.     Paragraph 96 is admitted.

97.     Paragraph 97 is admitted.

98.     Paragraph 98 is admitted.

99.     Paragraph 99 is denied.  Under the terms of the collective bargaining agreement between the Borough of Naugatuck and the police union, an investigation of a civilian that is not completed within 60 days of the receipt of the complaint is to be dismissed with prejudice, in which case no report of the investigation is prepared.  T. Deposition of Edward Clisham, December 18, 2003 at 42-43.

100.    Paragraph 100 is admitted.

101.    The plaintiff admits that Chief Clisham has testified that the most severe charges of police misconduct are referred to the Board of Police Commissioners for prosecution.  In practice, however, this is not always so.  In fact, the numerous complaints made to the Police Department for the Borough of Naugatuck about Argo were either ignored or disposed of in the same manner in which parking tickets and tickets issued for violations of snow parking bans are disposed of.  T. Deposition of Edward Clisham, supra at 43.

102.    Paragraph 102 is admitted.

103.    Paragraph 103 is admitted.

104.    Paragraph 104 is admitted.


**II.    DISPUTED ISSUES OF MATERIAL FACT.**

1.    Whether the manner in which Argo was used at the time of the events involving the plaintiff which occurred on the night of September 23, 1999 amounted to the use of excessive force.

2.    Whether defendant Deeley, in repeatedly striking Mr. Kromhout in the face as Mr. Kromhout was struggling to protect himself from Argo, violated Mr. Kromhout's fourth amendment right to be free from unreasonable searches and seizures.

3.    Whether the defendants conspired to violate Mr. Kromhout's fourth amendment right to be free from  unreasonable searches and seizures.

4.    Whether defendant Purcaro failed to intervene to prevent defendant Deeley and his K-9 Argo from violating the plaintiff's fourth amendment right against unreasonable searches and seizures.

14

5.     Whether the Borough of Naugatuck engaged in a pattern or practice of ignoring civilian complaints about K-9 Argo and in allowing K-9 Argo's continued use in tracking, apprehension, building searches, and other police activities even though it knew that K-9 Argo posed a risk of harm to people.

6.     Whether the plaintiff's injuries and losses were proximately caused by the defendants' violation of his civil rights.

THE PLAINTIFF

BY:     _____
STEVEN D. JACOBS, ESQ.
JACOBS, JACOBS & SHANNON, P.C.
265 ORANGE STREET
NEW HAVEN, CT 06510
(203) 562-6111
JURIS NO. 00409

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, postage prepaid, this

15

21st day of June, 2004 to:  Attorney Michael McKeon, Sullivan, Schoen, Campane & Connon, LLC, 646 Prospect Street, Hartford, CT 06105-4286, and Attorney James Tallberg, Updike, Kelly & Spellacy, One State Street, Hartford, CT 06103.


_____

STEVEN D. JACOBS

16