FILED

2004 JUL -2  P 4: 08

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID S. KROMHOUT<br>Plaintiff | CIVIL ACTION NO. 3:01CV1636 (SRU) |
| v. | |
| RICK R. SMOLICZ, ET AL.<br>Defendants | JULY 1, 2004 |

### DEFENDANTS' REPLY TO PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPORSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants, Michael Purcaro, Bart Deeley and the Borough of Naugatuck, respectfully reply to the plaintiff's Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment, dated June 4, 2004 ("Omnibus Mem.").

**I.   THE PLAINTIFF HAS OFFERED NO EVIDENCE TO CONTRADICT THE DEFENDANTS STATEMENT OF UNDISPUTED FACTS.**

The vast majority of the evidence set forth in the Local Rule 56(a)(1) Statement in Support of Defendants' Motion for Summary Judgment, (the "56(a)(1) Statement"), is uncontested by the plaintiff's Local Rule 56(a)(2) Statement in response (the "56(a)(2) Statement"). First, with respect to Officer Bart Deeley's training and qualifications as a canine officer, the plaintiff admits

367291

that Officer Deeley received extensive training in the use of K9 Argo. Compare 56(a)(1) Statement at ¶¶ 6, 8 with 56(a)(2) Statement at ¶¶ 6, 8. The plaintiff admits that throughout the course of Officer Deeley's training with K9 Argo, he and the K9 received satisfactory weekly performance evaluations. Id. Plaintiff also admits that at the conclusion of the training program, Officer Deeley became police dog handler certified by the State of Connecticut Department of Public Safety on June 25, 1998. Compare 56(a)(1) Statement at ¶ 11 with 56(a)(2) Statement at ¶ 11. The plaintiff also admits that the Borough of Naugatuck has adopted a uniform policy concerning the use of canines.[1] Compare 56(a)(1) Statement at ¶ 13 with 56(a)(2) Statement at ¶ 13.

The plaintiff admits that Cynthia Jaschinsky went to the Naugatuck Police Department headquarters on September 23, 1999 and claimed that Mr. Kromhout sexually assaulted her.

---

[1] Mr. Kromhout apparently disputes the fact that Officer Deeley's training and the Borough's canine policy permit Officer Deeley to use a canine to apprehend a suspect when that suspect is potentially armed. 56(a)(2) Statement at ¶ 16. In support of its position the plaintiff sites an outdated copy of the canine usage policy that addresses building searches. The plaintiff correctly quotes the policy, which states that "if a suspect is hidden or barricaded, the canine will alert the handler to his location." However, nothing in the quoted portion of the policy prohibits the use of a canine to apprehend an armed suspect. Moreover, the sentence of the policy right before the portion quoted by the plaintiff provides that "during a building search the canine works off leash and if the suspect is found he may be bitten when apprehended by the canine." Plaintiff's Exhibit F at 7. Plaintiff has provided no evidence to contradict defendant's assertion that the canine usage policy and Officer Deeley's training permit the use of K9 Argo to apprehend a potentially armed individual.

Compare 56(a)(1) Statement at ¶ 23, 24 with 56(a)(2) Statement at ¶ 23, 24. The plaintiff also admits that Ms. Jaschinsky had further claimed that Mr. Kromhout had threatened to burn down the apartment he shared with his live-in girlfriend, Carmella Liguori. Compare 56(a)(1) Statement at ¶ 31 with 56(a)(2) Statement at ¶ 31. After Ms. Jaschinsky provided her statement, Sergeant Smolicz and Officer Purcaro decided to investigate the complaint and proceeded to Mr. Kromhout's residence at 48 Washington Street in the Borough of Naugatuck. Compare 56(a)(1) Statement at ¶ 35, 40 with 56(a)(2) Statement at ¶ 35, 40. Although the plaintiff disputes the extent of the officers' knowledge of Mr. Kromhout's criminal past prior to their proceeding to his residence at 48 Washington Street, the plaintiff is willing to admit that they were investigating a possible felony.

The plaintiff admits that when the Naugatuck officers arrived at 48 Washington Street, the officers knocked at the door. Compare 56(a)(1) Statement at ¶ 56 with 56(a)(2) Statement at ¶ 56. Although the plaintiff disputes whether Sergeant Smolicz knew of Mr. Kromhout's criminal past when Smolicz went to investigate Ms. Jaschinsky's complaint, the plaintiff admits that once Mr. Kromhout recognized it was the police at the door, he fled from the officers and proceeded to hide under Ms. Liguori's bed. Compare 56(a)(1) Statement at ¶¶ 50-53 with 56(a)(2) Statement at ¶¶ 50-53. The officers entered the apartment, and Mr. Kromhout continued to refuse to make himself

known. Compare 56(a)(1) Statement at ¶ 63 with 56(a)(2) Statement at ¶ 63. Officer Deeley and K9 Argo arrived to help locate the suspect.

The plaintiff admits that according to Officer Deeley's depositions testimony, Sergeant Smolicz told him that that Mr. Kromhout was armed and dangerous. Compare 56(a)(1) Statement at ¶ 60 with 56(a)(2) Statement at ¶ 60. Plaintiff offers nothing to contradict this testimony. The plaintiff admits that Officer Deeley identified himself as a police officer with a canine and that Officer Deeley instructed him to drop the knife and make himself known to the officers. Compare 56(a)(1) Statement at ¶ 61 with 56(a)(2) Statement at ¶ 61. Mr. Kromhout admits that he heard Officer Deeley identify himself. Despite hearing Officer Deeley, the plaintiff continued to hide under Ms. Liguori's bed. Compare 56(a)(1) Statement at ¶ 62 with 56(a)(2) Statement at ¶ 63. Officer Deeley released K9 Argo and gave the dog the command to apprehend Mr. Kromhout.

The plaintiff claims that during the arrest he suffered serious injuries to his head as a result of Officer Deeley allegedly punching him in the face. Yet, the plaintiff admits that medical personnel, included the Emergency Medical Technician and the emergency room doctor that treated Mr. Kromhout immediately after the arrest for injuries related to the dog bites found no evidence that Mr. Kromhout had suffered any trauma to his head whatsoever. Compare 56(a)(1) Statement at ¶ 78-85 with 56(a)(2) Statement at ¶ 78-85.

Finally, the plaintiff admits that Lieutenant Jerry Scully of the Naugatuck Police Department conducted an investigation into the use of K9 Argo during Mr. Kromhout's arrest. Compare 56(a)(1) Statement at ¶ 90 with 56(a)(2) Statement at ¶ 90. The plaintiff admits that the Borough of Naugatuck has in place several procedures for handling citizen complaints of police misconduct. Compare 56(a)(1) Statement at ¶ 94 with 56(a)(2) Statement at ¶ 94. This includes the fact that the Naugatuck Police Department is overseen by a Board of Police Commissioners. Compare 56(a)(1) Statement at ¶ 95 with 56(a)(2) Statement at ¶ 95. Plaintiff admits that once a civilian complaint is received it is assigned to one of two individuals within the department to conduct an investigation. Compare 56(a)(1) Statement at ¶ 97 with 56(a)(2) Statement at ¶ 97. The plaintiff further admits that with respect to claims of excessive force, Chief Denis Clisham of the Naugatuck Police Department reviews each incidents and refers the most severe complaints to the Board of Police Commissioners. Compare 56(a)(1) Statement at ¶ 100 with 56(a)(2) Statement at ¶ 100. The plaintiff admits that several officers have been disciplined for violation of department policies. Compare 56(a)(1) Statement at ¶ 102 with 56(a)(2) Statement at ¶ 102. Moreover, the plaintiff admits that the Board of Police Commissioners has conducted several hearings regarding the discipline of police officers, and the discipline imposed has followed a progression ranging from verbal warnings, to written warnings, to suspension and discharge. Compare 56(a)(1) Statement at ¶ 104 with 56(a)(2) Statement at ¶ 104.

## II. THE PLAINTIFF CANNOT PROVE THAT OFFICER PURCARO IS LIABLE FOR FAILING TO INTERVENE.

In support of their Motion for Summary Judgment, the defendants argued that Officer Purcaro could not be held liable for failing to intervene to prevent Mr. Kromhout from being subjected to the allegedly excessive use of force. A cause of action against Officer Purcaro cannot stand, in part, because Officer Deeley did not act in such a way as to violate Mr. Kromhout's rights under the Fourth Amendment. See, e.g., Richardson v. City of Indianapolis 658 F.3d 494, 500 (7th Cir. 1984) (a claim that an officer failed to intervene in preventing a constitutional violation is untenable where the facts lead to a conclusion that there was no constitutional violation). Moreover, because Mr. Kromhout's arrest occurred quickly, even assuming that any violation of Mr. Kromhout's rights had been occurring, Officer Purcaro would not have had an opportunity to intervene to stop the violation. Thus, he cannot be held liable. See, e.g., Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991).

The plaintiff relies on the Second Circuit opinions in Anderson v. Branen 17 F.3d 552 (2d Cir. 1994) and Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) compel the conclusion that summary judgment must be denied on the plaintiff's claim against Officer Purcaro. Contrary to the plaintiff's assertion, neither opinion compels a denial of the summary judgment motion.

The plaintiff correctly asserts that in Anderson v. Branen, the Court concluded that because the extremely different version of the facts presented by the plaintiff and the defendant

officers, the jury should have been instructed with respect to the duty of an officer to intervene to prevent a constitutional violation. Here, the undisputed facts are not so dissimilar as to create an issue for the jury as whether or not Officer Purcaro failed to intervene. First, for the reasons discussed below, the undisputed facts make clear that there was no violation of Mr. Kromhout's civil rights. Mr. Kromhout was suspected of a felony and fled from the police. Moreover, Officer Deeley saw a knife next to Mr. Kromhout. Under these circumstances, it was reasonable for Officer Deeley to use K9 Argo to apprehend Mr. Kromhout, and accordingly, Officer Purcaro had no duty to intervene. With respect to the allegation that Mr. Kromhout was beaten, it is simply unsupported by the evidence.

Curley v. Village of Suffern actually supports the argument that summary judgment should be granted in favor of Officer Purcaro. In Curley, the Second Circuit held that an officer was not liable on the basis of his failure to intervene because the plaintiff only asserted "in a conclusory fashion that [the officer] had a duty to intercede but failed to do so." Id. at 72. "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Id. The evidence in Curley did not support a conclusion that the officer was aware that a constitutional violation was underway or that he had an opportunity to intercede. Similarly, Mr. Kromhout has not offered any evidence to demonstrate that a constitutional violation occurred in the first place, let alone that Officer Purcaro was aware that such a violation

was occurring. Even assuming that Officer Deeley was violating Mr. Kromhout's rights during the arrest, the plaintiff has failed to provide any evidence demonstrating that Officer Purcaro had any opportunity to interced. Accordingly, summary judgment should be granted in favor of the defendant Purcaro.

### III.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR EXCESSIVE FORCE CLAIM.

Plaintiff has offered nothing to contradict the defendant's argument that summary judgment should be granted on the excessive force claim. First, the plaintiff is unable to demonstrate that the use of K9 Argo to apprehend him constituted a violation of his right to be free from excessive force. Mr. Kromhout was the prime suspect in an investigation of a sexual assault and threatened arson, both felonies under Connecticut law. Not only was Mr. Kromhout a felony suspect, but when he became aware of the Naugatuck police officers at his door, he fled. The plaintiff is unable to overcome the litany of authority, which holds that the use of a canine to apprehend a fleeing suspect, especially when the individual is suspected of committing a felony, is reasonable as a matter of law. Def. Mem. of Law in Support of Mot. for Sum. Judg. at 17 (and case cited therein).

The plaintiff is critical of the fact that the defendants cited Miller v. Clark County, 340 F.3d 959 (2003), solely on the basis of the fact that the case was decided in the Ninth Circuit. Regardless of where Miller was decided, the facts of that case are substantially similar to the

367291                                              8

present case, and this court should find it persuasive. Like the present case, in Miller, the suspect fled an investigating officer and hid. Like Officer Deeley, the canine officer in Miller announced himself and instructed the fleeing felon that he should make himself known to the police. When the suspect refused to make herself know, the canine officer instructed the dog to apprehend. The court held that the use of force under these circumstances was reasonable. This court should reach the same result.

The plaintiff also alleges that Officer Deeley violated his right to be free from excessive force by striking him repeatedly in the head. The plaintiff's allegation that he was struck in the head, however, is completely unsupported by the undisputed medical evidence. Both the emergency medical technician who treated Mr. Kromhout immediately following his arrest and the emergency room doctor who subsequently treated Mr. Kromhout found no evidence of trauma to Mr. Kromhout's head or neck whatsoever. The plaintiff claims that testimony of Father Lawrence LeClair negates this medical evidence. To the contrary, in an admittedly short visit, several days after the arrest, Father LeClair claims that Mr. Kromhout's face was extremely swollen. This evidence is unpersuasive in light of the medical evidence following Mr. Kromhout's arrest, and the fact that nothing in any of Mr. Kromhout's medical records indicates that he was ever treated for any injuries to his head or face.

### IV. DEFENDANTS DEELEY AND PURCARO ARE ENTITLED TO QUALIFIED IMMUNITY.

In opposition to the Motion for Summary Judgment, the plaintiff contends that Officers Deeley and Purcaro violated a clearly established law and, thus are not entitled to qualified immunity. Plaintiff, however, offers no evidence or case law to contradict the defendants' assertion that the law governing the use of canines in law enforcement is not clearly established. Under the test for qualified immunity, "a law is considered 'clearly established' so long as this circuit's decisions clearly foreshadow a particular ruling on the issue." Tellier v. Fields, 230 F.3d 502, 515 (2d Cir. 2000). As the defendants pointed out in their Memorandum of Law, as of the date of Mr. Kromhout's arrest, there appears to be no controlling Supreme Court or Second Circuit case law regarding the appropriate use of a canine to apprehend a suspect. Plaintiff offers nothing to contradict this fact. Accordingly, Officers Deeley and Purcaro should be protected from liability by the doctrine of qualified immunity. Similarly, for the reasons set forth above, the conduct of these two officers was objectively reasonable.

### V. THE BOROUGH OF NAUGATUCK IS NOT LIABLE UNDER MONELL.

The plaintiff claims that the facts of this case "establish a pattern of deliberate indifference by the Borough of Naugatuck, through its police officers, including its police chief, Edward Clisham, to the rights of citizens." Omnibus Mem. at 10. The plaintiff alleges that the Borough

kept K9 Argo in service despite the fact that it knew the dog had a propensity to bite, and that it ignored citizen complaints about K9 Argo. The undisputed evidence makes clear, however, that the plaintiff cannot demonstrate deliberate indifference on the part of the Borough of Naugatuck to citizen complaints, including any alleged complaints about K9 Argo.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997). The undisputed evidence does not demonstrate a deliberate indifference to citizen complaints involving K9 Argo, but instead demonstrates that all citizen complaints are handled in accordance with adequate procedures put in place by the Borough. Once a civilian complaint is received it is assigned to one of two individuals within the department to conduct an investigation. With respect to any claims of excessive force made against Naugatuck officers, Chief Denis Clisham of the Naugatuck Police Department reviews each incidents and refers the most sever complaints to the Board of Police Commissioners. This procedure has been used to discipline several officers for violation of department policies and procedures. Moreover, the plaintiff admits that the Board of Police Commissioners has conducted several hearings regarding the discipline of police officers, and the discipline imposed has followed a progression ranging from verbal warnings, to written warnings, to suspension and discharge.

Plaintiff claims that prior complaints concerning K9 Argo have been disregarded and disposed of as if they were "complaints about parking tickets and snow removal bans." Plaintiff offers no evidence to support this conjecture, however. Accordingly, the Borough cannot be held liable based on a theory of deliberate indifference to citizen complaints.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that their Motion for Summary Judgment be granted in its entirety.

RESPECTFULLY SUBMITTED,

DEFENDANTS,
MICHAEL PURCARO, BART DEELEY and the
BOROUGH OF NAUGATUCK

By: *[signature]*
JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17489
MATTHEW FREIMUTH, ESQ.
Federal Bar Number Ct25245
UPDIKE, KELLY & SPELLACY, P.C.
One State St., P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed in the United States mail, First Class, postage prepaid this 1st day of July 2004, to the following:

Steven D. Jacobs, Esq.
Jacobs, Jacobs & Shannon
265 Orange Street
New Haven, CT 06510

Michael P. McKeon, Esq.
Sullivan, Schoen, Campane &
  Connon, LLC
646 Prospect Avenue
Hartford, CT 06105-4286

By: _____
MATTHEW FREIMUTH, ESQ.
UPDIKE, KELLY & SPELLACY, P.C.

367291

14